UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPHINE M. MALDONADO, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 10-cv-10862-DPW |
| CHASE HOME FINANCE, LLC, | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**I.   INTRODUCTION**

The plaintiff asserts two claims against Chase Home Finance, LLC ("Chase"), both of which rest exclusively upon allegations that Chase was too slow to respond to correspondence from her attorney, and both of which fail to state a claim for relief as a matter of law. First, the plaintiff claims that Chase violated the Massachusetts consumer protection statute because it failed to respond to her application for loan modification within the ten- and thirty-day time frames established by Supplemental Directive 09-07 of the United States Treasury Department. This claim is consonant with a wave of recent ill-fated lawsuits by borrowers against their mortgage servicers seeking to bootstrap a viable cause of action to the federal Home Affordable Modification Program ("HAMP"), which does not permit a private right of action. Second, the plaintiff claims that Chase is liable for statutory damages pursuant to section 1640 of the Truth In Lending Act ("TILA") because it failed to identify the owner of her mortgage in within a reasonable time after receiving a written request from the plaintiff's attorney. This claim must

fail because the plaintiff did not borrow money from Chase.  Chase merely services the loan.  Section 1640 is thus inapplicable.

## II.     BACKGROUND

### A.    THE PLAINTIFF'S 93A CLAIM IS PREDICATED ON AN ALLEGED VIOLATION OF HAMP

#### 1.    THE HOME AFFORDABLE MORTGAGE PROGRAM

HAMP is a federal program established by the Emergency Economic Stabilization Act of 2008 ("EESA") and administered by the United States Department of the Treasury.  See Ex. A to Complaint at 1.[1]  Under HAMP, loan servicers voluntarily enter into contracts with Federal National Mortgage Association ("Fannie Mae"), in its capacity as financial agent for the United States, to perform loan modification services in exchange for certain financial incentives.  See Complaint at ¶ 15; see also Template Servicer Participation Agreement ("HAMP Agreement") at Ex. 1 to Motion to Dismiss (the "Motion").  The servicer's obligations under HAMP are set forth in the HAMP Agreement, as well as in the Program Guidelines and Supplemental Directives established by the federal Department of the Treasury.  See Ex. A to Complaint at 2 (incorporating by reference all Program Guidelines and Supplemental Disclosures promulgated by Treasury).

#### 2.    PRIOR LITIGATION TO "ENFORCE" HAMP

This suit is consonant with a recent wave of actions claiming an entitlement to loan modifications under HAMP.  Treasury, however, has designated Freddie Mac as its exclusive

---

[1] Documents "sufficiently referred to in the complaint" or "central to the plaintiffs' claim" are properly considered on Rule 12(b)(6) motions, without requiring that the motion be converted to one under Fed. R. Civ. P. 56.  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); see Marrero v. Aragunde, 2009 U.S. App. LEXIS 19299, *4 n.3 (1st Cir. 2009) (unpublished) ("[w]hen a complaint's factual allegations are expressly linked to – and admittedly dependant upon – a document (the authenticity of which is not challenged), then the court can review it as a motion to dismiss") (internal quotations omitted).  The Complaint attaches the alleged Servicer Participation Agreement between Chase and Federal National Mortgage Association only "in part."  Complaint at ¶ 17.  A template of the entire Servicer Participation Agreement is attached as Exhibit 1 to the Motion to Dismiss.

agent in ensuring compliance with HAMP, and the program provides for extensive monitoring and compliance procedures.  Ex. A to Complaint at 1; Ex. 1 to Motion at 1.  Accordingly, every federal court to have addressed the issue has uniformly held that **there is no private right of action to enforce HAMP**.

> Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide for a private right of action.  Rather Congressional intent expressly indicates that compliance authority was delegated solely to Freddie Mac.  By delegating compliance authority to one entity, Freddie Mac, Congress intended that a private cause of action was not permitted.

Marks v. Bank of Am., N.A., 2010 U.S. Dist. LEXIS 61489, *16 (D. Ariz. June 22, 2010); see also Simon v. Bank of Am., N.A., 2010 U.S. Dist. LEXIS 63480, *26-27 (D. Nev. June 23, 2010) (holding that "the Home Affordable Modification Program does not provide borrowers with a private cause of action against lenders" and dismissing claim); Aleem v. Bank of Am., N.A., 2010 U.S. Dist. LEXIS 11944, *8-11 (C.D. Cal. Feb. 9, 2010) (same); Gaitan v. Mortg. Elec. Registration Sys., 2009 U.S. Dist. LEXIS 97117, *38 (C.D. Cal. Oct. 5, 2009) (same).  Nor is there a right of action under the EESA, HAMP's authorizing statute.  See, e.g., Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1185-86 (N.D. Cal. 2009) (no private right of action under EESA).[2]

Plaintiffs across the country have attempted to circumvent this barrier by bootstrapping HAMP violations to recognized private rights of action, including Due Process theories, breach of contract claims as purported third-party beneficiaries of the HAMP Agreements, and, as here, violations of state consumer protection statutes.  Federal courts have uniformly rejected these

---

[2] The lack of a private right of action to enforce HAMP is no oversight.  HAMP is a voluntary program.  See Williams v. Geithner, 2009 U.S. Dist. LEXIS 104096, *22 (D. Minn. Nov. 9, 2009).  Few banks would agree to participate in HAMP if, by doing so, they exposed themselves to lawsuits by the millions of borrowers who have sought or will seek HAMP modifications.  See Villa, 2010 U.S. Dist. LEXIS 23741, at *7 n.1 (holding that borrowers lacked standing to bring contract claims to enforce HAMP Agreements in part because of "the breadth and indefiniteness of a class of [would-be] beneficiaries").

attempts because there is no private right of action under HAMP.  See, e.g., Aleem, 2010 U.S. Dist. LEXIS 11944, at *3-4 (dismissing claim under California consumer protection statutes predicated in part on servicer's failure "to determine plaintiff's eligibility for the HAMP"); Williams, 2009 U.S. Dist. LEXIS 104096, *21-22 (holding that there is no cognizable property interest in loan modifications and thus rejecting Due Process claim); Escobedo v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 117017, *4-7 (S.D. Cal. Dec. 15, 2009) (rejecting plaintiffs' breach of contract claim because borrowers are not intended beneficiaries under HAMP Agreements); Villa v. Wells Fargo Bank, N.A., 2010 U.S. Dist. LEXIS 23741, *6-7 (S.D. Cal. Mar. 15, 2010) (same); Benito v. Indymac Mortg. Servs., 2010 U.S. Dist. LEXIS 51259, *20-21 (D. Nev. May 21, 2010) (same); Burtzos v. Countrywide Home Loans, 2010 U.S. Dist. LEXIS 53509, *5-6 (S.D. Cal. June 1, 2010) (same); Zendejas v. GMAC Wholesale Mortg. Corp., 2010 U.S. Dist. LEXIS 59793, *7-9 (E.D. Cal. June 15, 2010) (same); Marks, 2010 U.S. Dist. LEXIS 61489, at *16 (same); Simmons v. Countrywide Home Loans, Inc., 2010 U.S. Dist. LEXIS 65031, *15 (S.D. Cal. June 29, 2010) (same).

### 3.  THE PLAINTIFF'S COMPLAINT[3]

The plaintiff at bar relies upon Chase's alleged failure to meet its obligations under Treasury's Supplemental Directive 09-07[4] ("SD 09-07") as the sole predicate for her 93A claim. Id. at ¶¶ 25-26.  In particular, the plaintiff cites to two servicer obligations under SD 09-07:

> **Within 10 business days** following receipt of borrower financial information verbally or in a completed [Request for Modification and Affidavit ("RMA")], the servicer must acknowledge the borrower's request for HAMP participation by sending the borrower [one of two notices or a written denial].

---

[3] Chase assumes that the allegations contained in the plaintiff's complaint are true, as it must, only for purposes of the instant Motion to Dismiss.  Chase expressly reserves the right to otherwise dispute and disprove those allegations.

[4] A complete copy of SD 09-07 is attached as Exhibit 2 to the Motion.

983908-1                                              4

>**Within 30 calendar days** following the servicer's receipt of a completed RMA, Form 4506-T and all required income and other information (including all required documentation and either the borrower's tax transcript or tax return when using the verified approach), the servicer must complete its evaluation of borrower eligibility and notify the borrower of its determination …

Ex. 2 to Motion at 7; see Complaint at ¶ 25.

The plaintiff's attorney sent "a completed HAMP loan-modification application to [Chase], which included income verification, bank statements, the official HAMP [RMA], and other documentation" on February 13, 2010. Complaint at ¶ 23. The plaintiff does not expressly allege that her attorney included Form 4506-T or "all required income and other information." Nevertheless, the plaintiff alleges that Chase's failure to respond within either the ten- or thirty-day time periods established by SD 09-07 was an "unfair or deceptive business practice in violation of … M.G.L. c. 93A.: Complaint at ¶¶ 25-26.

### B. THE PLAINTIFF'S CLAIM FOR VIOLATION OF TILA

#### 1. THE COMPLAINT ALLEGES THAT CHASE IS A *SERVICER* OF PLAINITFF'S MORTGAGE, NOT A CREDITOR

The Complaint repeatedly alleges that Chase is the *servicer* of the plaintiff's mortgage. See, e.g., id. at ¶ 1 (Chase "is the mortgage company that services the mortgage on Plaintiff's primary residence), ¶ 9 (Chase "services the mortgage on Plaintiff's residence"), ¶¶ 14-18 (alleging Chase, as servicer, entered into HAMP Agreement), ¶ 33-36 (alleging Chase owed plaintiff statutory duties owed by mortgage servicers to borrowers). Nowhere does the Complaint allege, however, that Chase is the *creditor* with respect to the plaintiff's mortgage. Rather, the Complaint merely alleges that Chase is generally in the business of being a creditor. Id. at ¶ 8 (alleging that Chase's "principal business is the servicing and origination of mortgage loans"), ¶ 32 (alleging that "at all relevant times, [Chase], in the ordinary course of its business,

regularly extended or offered to extend consumer credit"). As discussed in more detail below, these allegations are insufficient to state a claim against Chase pursuant to 15 U.S.C. § 1640 because that section only permits recovery against an actual creditor of the plaintiff.

### III. ARGUMENT

#### A. THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF

While the Court must accept the well-pleaded allegations in the Complaint, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When considering a motion to dismiss, the Court must assess whether the plaintiff has provided allegations that "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Id. at 555, 570. As the Supreme Court has recently stated, Fed. R. Civ. P. 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions …. [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

Moreover, where the complaint attaches exhibits, those exhibits are part of the allegations of the complaint for purposes of a motion to dismiss. Blackstone Realty LLC v. FDIC, 244 F.3d 193, 195 n.1 (1st Cir. 2001) (citing Fed. R. Civ. P. 10(c)). If the complaint's allegations conflict with the exhibits, the exhibits control. Clorox Co. v. Procter & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (citation omitted) ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations").

Neither of the plaintiff's theories of recovery is plausible on their face. The plaintiff is not entitled to relief under Mass. Gen. Laws c. 93A for an alleged violation of HAMP because

HAMP permits no private right of action.  Similarly, claims pursuant to § 1640 of TILA may only be made against actual creditors of the plaintiff, not against servicers.  The Court should therefore dismiss the Complaint with prejudice and without leave to amend.  See Iannacchino v. Ford Motor Company, 451 Mass. 623, 637-38 (Cowin, J., dissenting in part and concurring in part) (reasoning that plaintiffs' failure to satisfy minimum pleading requirements should result in dismissal with prejudice).

B.   **THE PLAINTIFF HAS FAILED TO PLEAD A CLAIM UNDER 93A**

To successfully plead a claim under Mass. Gen. Laws c. 93A, a plaintiff must plausibly allege, *inter alia*, (1) an unfair or deceptive act or practice by the defendant and (2) a causally related injury.  See Rule v. Fort Dodge Animal Health, Inc., 604 F. Supp. 2d 288, 298-306 (D. Mass. 2010) (Woodlock, J.), *aff'd by* 2010 U.S. App. LEXIS 11127 (1st Cir. 2010) ("deception and injury are independently required elements of a Chapter 93A claim") (*quoting* Hershenow v. Enterprise Rent-A-Car Co., 445 Mass. 790, 802 (2006)).  The plaintiff has not plausibly alleged either of these elements.

1.   **THE PLAINTIFF'S 93A CLAIM CANNOT BE PREDICATED ON AN ALLEGED HAMP VIOLATION**

While no court has yet considered the specific question of whether a HAMP violation is an "unfair or deceptive act or practice" within the meaning of Mass. Gen. Laws c. 93A, § 2, the question has arisen in the context of similarly comprehensive statutory schemes which provide no private right of action.  See, e.g., J.E. Pierce Apothecary, Inc. v. Harvard Pilgrim Healthcare, Inc., 365 F. Supp. 2d 119, (D. Mass. 2005); Whitehall Co. v. Merrimack Valley Distrib. Co., 56 Mass. App. Ct. 853, 854-63 (2002) (holding violation of price discrimination statute applicable to liquor distributors was not unfair or deceptive act or practice under c. 93A, § 2).  In those cases, Massachusetts courts have reasoned that violations of a particular statute or regulation

which itself does not permit a private right of action may give rise to a claim under c. 93A only if (1) the violation amounts to an unfair or deceptive practice independently prohibited by c. 93A, § 2 and (2) recovery under 93A, § 2 is compatible with the objectives and enforcement mechanisms within the underlying statute or regulation.  Id. at 858; see J.E. Pierce Apothecary, 365 F. Supp. 2d at 142-50 (applying Whitehall test to determine whether violation of "Any Willing Provider Law," Mass. Gen. Laws c. 176D, § 3B, was appropriate predicate for a claim under c. 93A).

          **a.**      **HAMP Violations Are Not Independently Prohibited By Chapter 93A**

The plaintiff makes two arguments why Chase's alleged delay in responding to her application for loan-modification was an "unfair or deceptive act or practice" prohibited by 93A. See Ex. C to Complaint at 2.  First, because it was tantamount to violating a rule "meant for the protection of the public's health, safety, and welfare" within the meaning of 940 C.M.R. § 3.16. Id.  Second, because the alleged delay was "unfair or unconscionable" within the meaning of 209 C.M.R. § 18.21.  Id.  Both of these arguments fail as a matter of law.  See Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 290 (D. Mass. 2009) (Woodlock, J.) ("Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact … the boundaries of what may qualify for consideration as a c. 93A violation is a question of law") (*quoting* Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008)) see also Muckle v. Fremont Inv. & Loan, 2010 U.S. Dist. LEXIS 32729, *5 (D. Mass. 2010) (entering judgment for defendant because 93A does not "create a cause of action in the absence of a cognizable underlying claim of unfair practices").

940 C.M.R. § 3.16 states that an act or practice violates c. 93A if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health,

safety, or welfare *promulgated by the Commonwealth or any political subdivision thereof* intended to provide the consumers of this Commonwealth protection." (Emphasis added). The only predicate for the plaintiff's 93A claim in the case at bar, however, is an alleged violation of *federal* law. See Complaint at ¶¶ 10-30 (*citing* SD 09-07). On its face, 940 C.M.R. § 3.16 does not encompass violations of federal law. There is no federal analogue to the cited Massachusetts regulation, "and thus it is doubtful that a Chapter 93A violation can result solely from the violation of federal law." Friendly Fruit, Inc. v. Sodexho, Inc., 529 F. Supp. 2d 158, 166 n.2 (D. Mass. 2007) (permitting 93A claim to proceed to trial on separate theories of unfair practices).

Similarly, Chase's alleged delay falls well outside the scope of "unfair or unconscionable" conduct proscribed by 209 C.M.R. § 18.21. The purpose of 209 C.M.R. § 18.00 *et seq.*, "is to establish standards … for the collection of debts … by debt collectors and third party loan servicers …." § 18.01; Holland v. EMC Mortg. Corp., 2008 Bankr. LEXIS 3411, *21 n.9 (Bankr. D. Mass. 2008). Accordingly, the prohibited conduct enumerated in § 18.21, while not an exhaustive list, concerns the mortgage servicer's activity as a debt collector. See § 18.21(1) and (2) (concerning the collection and application of payments); § 18.21(3), (5), and (8) (concerning unreasonable charges and fees); § 18.21(4) (concerning the timely provision of loan payoff information); § 18.21(6) and (7) (concerning credit reporting); § 18.21(9) and (10) (concerning foreclosure and self-help).

By contrast, Chase's alleged delay in responding the plaintiff's loan modification application under HAMP, which did not exist when § 18.21 went into effect in 2004,[5] concerns Chase's activity pursuant to the Servicer Participant Agreement, not its activities as a debt collector. See § 18.01. The plaintiff is not a party to that agreement, and has no standing to sue

---

[5] See 209 C.M.R. § 18.24.

to enforce it.  See Escobedo, 2009 U.S. Dist. LEXIS 117017 at *4-7 (borrower is not third-party beneficiary to HAMP agreement).  Chase's alleged delay was not therefore "unfair or unconscionable" within the meaning of § 18.21.

        **b.**        **Chapter 93A Is Wholly Incompatible With HAMP's Enforcement Provisions**

While ostensibly plead as a garden variety 93A claim, the exclusive predicate for the necessary element of an "unfair or deceptive act or practice" is Chase's allegedly unlawful delay in responding to the plaintiff's application for loan modification pursuant to HAMP.  Complaint at ¶¶ 10-30.  Neither HAMP, its guidelines or supplemental directives, nor EESA, its authorizing statute, however, provide for a private right of action, expressly or by implication.  See Marks, 2010 WL 2572988 at *6; see 12 U.S.C. §§ 5219, 5229.  To the contrary, Congress intended to delegate compliance authority to Freddie Mac, and only to Freddie Mac.  Id.  In so doing, "Congress intended that a private cause of action was not permitted."  Id. (applying doctrine of *expressio unius est exclusio alterius*) (*citing* Reyes-Gaona v. N.C. Growers Ass'n, 250 F.3d 861, 865 (4th Cir. 2001)); see United States v. Hernandez-Ferrer, 599 F.3d 63, 67-68 (1st Cir. 2010) ("The maxim *expressio unius est exclusio alterius* … is a venerable canon of statutory construction") (internal quotations omitted).

        It is clear that enforcement of HAMP was contemplated only from the top down.  Freddie Mac is the sole compliance officer for HAMP.  Supplemental Directive 09-08, at 4 (Nov. 3, 2009); Marks, 2010 WL 2572988 at *6.  Servicers "are required to collect, retain, and transmit mortgagor and property data to Freddie Mac in order to ensure compliance with the program." Supplemental Directive 09-01, 13-14, 19-21 (Apr. 6, 2009); Marks, 2010 WL 2572988 at *6; see Supplemental Directive 09-06 (Sept. 11, 2009).  "Freddie Mac is charged with conducting 'independent compliance assessments' including 'evaluation of documented evidence to confirm

adherence … to HAMP requirements.'" Marks, 2010 WL 2572988 at *6 (*citing* SD 09-01 at 25-26).  Permitting a private right of action "would not further the legislative intent because the HAMP Guidelines [have] already designated a scheme to correct for any mortgagee wrongdoing." Id. at *7.

Numerous courts have already held that state laws cannot be used to create a private right of action against mortgage servicers because none exists under EESA or HAMP.  See Aleem, 2010 U.S. Dist. LEXIS 11944 at *8-11 (dismissing claim under California consumer protection statute insofar as it was predicated on violations of National Housing Act or HAMP); Pantoja, 640 F. Supp. 2d at 1185-86 (no private right of action under EESA); Ung v. GMAC Mortgage, LLC, 2009 WL 2902434, *9-11 (N.D. Cal. 2009) (dismissing state law claims predicated on alleged violations of EESA or Troubled Asset Relief Program ("TARP")[6]); Gonzales v. First Franklin Loan Servs., 2010 WL 144862, *18 (E.D. Cal. 2010) (no private right of action under TARP or EESA); see also Robinson v. Wells Fargo Bank, N.A., 2010 WL 2534192, *5-8 (D. Ariz. 2010) (TARP does not create private right of action); 2010 WL 2572988 at *3-7 (finding neither express nor implied private right of action under HAMP).

In Aleem, the plaintiff-borrower asserted nine predicate violations in her claim under the California consumer protection statute (the "UCL," Cal. Bus. & Prof. Code § 17200), including several alleged violations of state law and, as in the instant case, the servicer's alleged failure "to determine [p]laintiff's eligibility for the [HAMP]."  2010 U.S. Dis. LEXIS 11944 at *3.  The United States District Court for the Central District of California held that the alleged HAMP violation could not be the predicate for a UCL claim because, in part, HAMP does not permit a private right of action.  Id. at *3.  The Court therefore dismissed so much of the UCL claim as

---

[6] TARP is the applicable subsection of EESA.  See Pub. L. No. 110-343, 122 Stat. 3767 (October 3, 2008) (*codified* at 12 U.S.C. § 5201 *et seq.*).

was predicated on the HAMP violation.[7] The plaintiff at bar has alleged only one predicate for her claim under the Massachusetts consumer protection statute: Chase's alleged violation of HAMP. The entire 93A claim should therefore be dismissed because HAMP does not permit a private right of action. See id.

In Marks, the plaintiff asserted a breach of contract claim against her mortgage servicer on the theory that she was a third-party beneficiary of her servicer's HAMP contract with Fannie Mae. 2010 WL 2572988, *1-7. After rejecting her status as third-party beneficiary, the United States District Court for the District of Arizona further wrote that the plaintiff's "allegations regarding breach of contract are simply an attempt at enforcing a private right of action under HAMP." Id. at *2-5. The Court refused to permit the plaintiff to end-run around HAMP's intentional omission of a private right of action by asserting an ostensible breach of contract claim under state law. Id. at 5-7.

Similarly, this Court should refuse to permit the plaintiff to end-run around HAMP's omission of a private right of action by asserting an ostensible 93A claim under state law. To hold otherwise would be wholly incompatible with the intent of HAMP's top-down enforcement scheme. See id.; see also Alexander v. Sandoval, 532 U.S. 275, 290 (2001) (stating express provision of one method of enforcing substantive rule suggests Congress intended to preclude other methods).

### 2. THE PLAINTIFF HAS NOT ALLEGED ANY COGNIZABLE INJURY WHATSOEVER

---

[7] The Court also noted that the "UCL cannot create a private right of action where none exists under the federal statute," echoing the concerns expressed by a District of Massachusetts Court in its 2007 Sodexho decision. Sodexho, Inc., 529 F. Supp. 2d at 166 n.2 ("it is doubtful that a Chapter 93A violation can result solely from the violation of federal law").

93A was not "meant to authorize purely vicarious suits by self-constituted private attorneys-general." Rule, 604 F. Supp. 2d at 304 (*quoting* Leardi v. Brown, 394 Mass. 151, 161 (1985). "Proving a causal connection between a deceptive act and a loss to the consumer is an essential predicate for recovery under [93A]." Hershenow, 445 Mass. at 791. Even assuming that Chase's alleged delayed response was an unfair or deceptive or practice, the plaintiff must allege that she was made worse off as a result. See id. at 800-01.

The plaintiff makes only a single conclusory allegation that she suffered any injury as a result of Chase's alleged noncompliance with SD 09-07:

> As a direct result of [Chase's] violations of the Consumer Protection Act, Plaintiff has suffered actual damages, including but not limited to not being considered for a loan modification, and having her home put in imminent danger of foreclosure by [Chase].

Complaint at ¶ 30. These alleged injuries – (1) not being considered for a loan modification and (2) having her home put in imminent danger of foreclosure – are wholly insufficient to support a claim under 93A, let alone to confer jurisdiction on this Court under Article III of the United States Constitution, because they are not injuries at all.[8] See Rule, 604 F. Supp. 2d at 306 (reasoning that a Court might lack Article III jurisdiction over a 93A claim involving no injury-in-fact because such a plaintiff lacks standing) (*citing* Rivera v. Wyeth-Ayerst Laboratories, 282 F.3d 315, 316-20 (5th Cir. 2002)). Rather, they are allegations of injuries which might occur at some unknown point in the future, but have not yet occurred. See, e.g. Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) (reasoning that Article III standing requires injury-in-fact that "must be concrete in both a qualitative and temporal sense" and "actual or imminent, not conjectural or

---

[8] The allegation of damages purports to "include but not [be] limited to" the two expressly identified injuries. The Plaintiff has an obligation under Fed. R. Civ. P. 8(a), however, to "provide the grounds of [her] entitlement to relief … and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (*quoting* Papasan v. Allain, 478 U.S. 265, 286 (1986). To the extent that the plaintiff has alleged damages other than those specifically enumerated, those allegations are too speculative to state a claim of injury. See id. (*citing* Wright & Miller, Federal Practice and Procedure § 1216, at 235-36 (3d. ed. 2004)).

hypothetical") (internal quotations omitted); <u>McInnis-Misenor v. Me. Med. Ctr.</u>, 319 F.3d 63, 66-74 (1st Cir. 2003) (relying upon doctrine of ripeness to affirm dismissal of plaintiff's claims because alleged injury was too remote and too contingent).

The first alleged injury does not flow logically from the alleged conduct. The plaintiff alleges that Chase failed to respond to her application within the ten- and thirty-day time periods proscribed in SD 09-07. As a result, the plaintiff alleges injuries including "not being considered for a loan modification." But she has not lost an opportunity to be evaluated for a loan modification – she simply has not *yet* been evaluated. There is no allegation that Chase has denied the plaintiff's application for a loan-modification, nor is there any provision in HAMP or its implementing guidelines establishing that a servicer's delayed response is tantamount to a denial. Accordingly, she has not *yet* suffered any injury, nor is it likely that she will. She therefore does not *yet* have a cause of action under 93A, <u>see</u> <u>Hershenow</u>, 445 Mass. at 791, 800-01, and the injury alleged, if it exists at all, is too remote in time to confer standing under Article III of the United States Constitution.

The second injury alleged is expressly contradicted by the exhibits to the Complaint. <u>See</u> <u>Clorox Co.</u>, 228 F.3d at 32 ("It is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations"). The Complaint alleges that that Chase "agreed to follow the guidelines issued by Treasury which are incorporated by reference into [Chase's] HAMP Contract." Complaint at ¶ 18. One such Treasury guideline – Supplemental Directive 10-02 – expressly prohibits Chase from foreclosing on the plaintiff's home while her application for loan-modification is pending. It provides:

> A servicer may not refer any loan to foreclosure or conduct a scheduled foreclosure sale *unless* and *until* at least one of the following circumstances exists:

- The borrower is evaluated for HAMP and is determined to be ineligible for the program; or

- The borrower is offered a trial period plan, but fails to make a trial period payment by the last day of the month in which such payment is due; or

- The servicer has established right party contact, has sent at least two written requests asking the borrower to supply required information in accordance with this Supplemental Directive and has otherwise satisfied the Reasonable Effort solicitation standard, and the borrower failed to respond by the dates indicated in those requests; or

- The servicer has satisfied the Reasonable Effort solicitation standard without establishing right party contact; or

- The borrower or co-borrower states he or she is not interested in pursuing a HAMP modification and such statement is reflected by the servicer in the servicing system.

SD 10-02, Exhibit 3 to Motion at 5. (emphasis in original). The plaintiff alleges that she applied for a loan modification pursuant to HAMP, but that Chase has yet to respond. Complaint at ¶¶ 14-30.

Under the circumstances alleged, foreclosure is far from imminent: Chase is expressly prohibited from pursuing it at this time. SD 10-02, Ex. 3 to Motion at 5. The plaintiff has therefore failed to allege that she was made worse off by Chase's alleged delay. See Hershenow, 445 Mass. at 800-01; see also Whitmore, 495 U.S. at 155; McInnis-Misenor, 319 F.3d at 66-74. Absent sufficient allegations of injury, the plaintiff's 93A claim must fail. See id.

**C.   THE PLAINTIFF HAS FAILED TO PLEAD A CLAIM UNDER TILA**

The plaintiff next asserts that Chase is liable under § 1640 of the Truth in Lending Act because it failed to respond to her attorneys' written request for the identity of the owner of her mortgage.[9] Complaint at ¶¶ 31-37. Section 1640(a) of TILA creates a

---

[9] 15 U.S.C. § 1641(f)(2) provides that, "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." See Complaint at ¶ 33.

983908-1                           15

private right of action only against creditors, however, not servicers. § 1640(a) ("any *creditor* who fails to comply with any requirement imposed under this chapter … with respect to any person is liable to such person") (emphasis added). To survive a motion to dismiss, therefore, the plaintiff must have plausibly alleged that Chase is a "creditor" within the meaning of the statute. She has not done so, and her TILA claim should therefore be dismissed.

>TILA provides a two-pronged definition of "creditor":
>
>The term "creditor" refers only to a person who both:
>
>(1) regularly extends consumer credit … which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and
>
>(2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

See 15 U.S.C. § 1602(f) (emphasis added). Both prongs are necessary: the failure to meet either precludes a person from being a creditor within the meaning of the statute.

The Complaint makes only a conclusory allegation that Chase meets the first prong of TILA's definition of creditor, reciting the statute nearly verbatim. See Complaint at ¶ 32 ("[Chase] … regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments"). There is no allegation, however, that Chase meets the second prong; and indeed, Chase does not meet the second the prong. See id. at ¶¶ 1-37. As alleged, Chase is the servicer of the loan and nothing more. See id.

Courts in other jurisdictions addressing this precise issue have held uniformly that mere servicers are not subject to liability under § 1640 because they do not meet TILA's

two-prong definition of creditor.  See Fullmer v. JPMorgan Chase Bank, N.A., 2010 U.S. Dist. Lexis 3551 *11-12 (E.D. Cal., 2010); Lippner v. Deutsche Bank Nat'l Trust Co., 544 F. Supp. 2d 695, 698-99 (N.D. Ill., 2008).

In Lippner, the United State District Court for the Northern District of Illinois awarded summary judgment to a mortgage servicer on the plaintiff's claim for statutory damages pursuant to § 1640.  544 F. Supp. 2d at 698-99 (also entering summary judgment for servicer with respect to rescission claim).  After reciting the two-pronged statutory definition of creditor, the Court examined the record and found no evidence to support a finding that the defendant met the second prong of the definition.  Id.  The record instead reflected that the defendant was merely a servicer and therefore entitled to summary judgment on the § 1640 claim.  Id.

In Fullmer, the United States District Court for the Eastern District of California dismissed the plaintiff's § 1640 claims against two defendant-servicers.  2010 U.S. Dist. Lexis 3551 at *11.  After reciting TILA's two-pronged definition of creditor, the Court concluded that the sum of the plaintiff's allegations established only that the defendants were servicers and dismissed the claims.  Id. at *11-12.  The Court was not persuaded by the plaintiff's argument that the servicers had concealed the identity of the actual creditors by failing to respond to the plaintiff's written requests, presumably made pursuant to § 1641(f)(2).  Id. *2, *11-12 (rejecting claim that servicers' alleged concealment gave rise to servicer liability under TILA through the common law doctrine of agency).

The instant case is indistinguishable from Lippner and Fullmer.  The plaintiff has failed to allege that Chase is a creditor as defined by TILA.  Rather, the sum of the plaintiff's

allegations – indeed, the entire basis for the plaintiff's 93A claim – is that Chase is the mortgage *servicer*. The plaintiff's claim under § 1640 must therefore be dismissed.[10]

## IV. CONCLUSION

For the foregoing reasons, Chase respectfully requests that the Court dismiss the Complaint with prejudice.

CHASE HOME FINANCE, LLC,
By its Attorneys,

 /s/ Matthew A. Kane
Donn A. Randall, BBO# 631950
Matthew A. Kane, BBO# 666981
Bulkley, Richardson and Gelinas, LLP
98 North Washington Street, Suite 500
P.O. Box 9750
Boston, MA 02114-0016
(617) 368-2500
drandall@bulkley.com
mkane@bulkley.com

Dated: August 6, 2010

## CERTIFICATE OF SERVICE

I, Matthew A. Kane, hereby certify that a true and correct copy of the foregoing document was served upon the parties listed below via this Court's CM/ECF system or, if not registered on this Court's CM/ECF system, then via first class mail, postage prepaid, on August 6, 2010.

 /s/ Matthew A. Kane
Matthew A. Kane

---

[10] Nor should Chase be treated as an "assignee" of the plaintiff's debt obligation. See § 1641(f)(1). There is no allegation that Chase is or ever was the owner of the plaintiff's obligation. Id.; see Complaint at ¶¶ 1-37.